J. S. B. Apollos et al. v. M. W. Staniforth.

No. 189.

1. **Judicial Cognizance—Laws in Indian Territory.**—Congress having adopted certain chapters of Mansfield's Digest of the Statutes of Arkansas as the law in force in the Indian Territory, the courts of Texas will take judicial cognizance of the laws thus adopted, and they need not be pleaded.

2. **Contract—Law of Place Governs, when.**—An instrument executed in the Indian Territory, where the personal property conveyed thereby was situated, is to be governed, in determining its nature and validity, and whether it is to be held an assignment or a chattel mortgage, by the laws in force where it was executed.

3. **Chattel Mortgage or Assignment — Instrument Construed.**—See the opinion for an instrument which, upon its face, would be held under the Texas law to be a mortgage, and under the law of Arkansas an assignment, subject, however, to be declared a mortgage upon parol evidence that it was so intended.

Appeal from Cooke. Tried below before Hon. D. E. Barrett.

*Davis & Garnett*, for appellants.—The court erred in sustaining the demurrers to plaintiffs' petition. Hudson v. Milling Co., 79 Texas, 401; Watterman v. Silberberg, 67 Texas, 100; Johnson v. Robinson, 68 Texas, 399; Jones on Mort., sec. 355; Gage v. Chesebro, 49 Wis., 486; Smith v. Beattie, 31 N. Y., 342; Box v. Goodbar, 14 S. W. Rep., 925.

*Stuart & Lewis*, for appellee.—Under the law of Arkansas, the instrument in question is an assignment for the benefit of creditors, and void because not in compliance with the assignment law of that State. Apollos v. Brady, 49 Fed. Rep., 401; Richmond v. Miss. Mills, 11 S. W. Rep., 960; The State v. Dupuy, 11 S. W. Rep., 964; Box v. Goodbar, 14 S. W. Rep., 920; Bartlett v. Teah, 1 Fed. Rep., 768; Jones on Chat. Mort., sec. 352; Leitch v. Hollister, 4 N. Y., 211; Woodruff v. Robb, 19 Ohio St., 216; Burr. on Ass., 16, note 7; Mans. Dig. Laws of Ark., 219.

HEAD, Associate Justice.—November 17, 1890, one A. M. Means, who was doing business at Ardmore, Indian Territory, executed the following instrument:

"*Indian Territory, Chickasaw Nation.*—Know all men by these presents, that I, A. M. Means, of the Chickasaw Nation, Indian Territory, have this day, for and in consideration of the sum of $1, to me in hand paid by J. S. B. Apollos, receipt of which is hereby acknowledged, and the debts and trusts hereinafter mentioned, bargained, sold, conveyed, and delivered, and by these presents do bargain, sell, convey, and deliver, to said J. S. B. Apollos my entire stock of goods, wares, and merchandise now located

in a building in the town of Ardmore, Indian Territory, on the main street thereof, between the store houses now occupied by Frendsley Bros. and J. S. B. Apollos, consisting of a general stock of groceries, queensware, bagging, ties, glassware, stoves, tinware, stoneware, hardware, etc.: To have and to hold unto the said J. S. B. Apollos, his heirs and assigns forever. And I hereby covenant with the said J. S. B. Apollos that I am lawfully seized of said above described property, and have good right to dispose of the same, and I will, and my heirs, executors, and administrators shall, warrant and forever defend said property unto the said J. S. B. Apollos, his heirs and assigns. This conveyance is intended, however, for the following purposes, to-wit: I am indebted to Waples-Platter Company, of Denison and Gainesville, Texas, in the sum of $849.32, of which said sum $451.41 is evidenced by a promissory note for $449.92 with accrued interest, said note dated September 8, 1890, due sixty days after date; and $397.91 is evidenced by open accounts; and I am indebted to Tyler & Simpson, of Gainesville, Texas, in the sum of $833.58, and this conveyance is intended to secure said Waples-Platter Company and Tyler & Simpson in the payment of said sums of money. The said J. S. B. Apollos is hereby authorized and empowered to take immediate possession of said above described property, and dispose of the same at private sale for cash, and apply the same to the payment of my said indebtedness to said Waples-Platter Company and Tyler & Simpson, until said indebtedness to said parties is paid in full. And the said J. S. B. Apollos is further hereby empowered to apply any proceeds of the sale of said property to payment of the necessary expenses of selling said property at private sale, as above specified, including a salary of $75 per month as compensation to himself. After said expenses as above set forth and said indebtedness have been paid, the remainder of said property and the said proceeds thereof shall be turned over to me; and on payment of said expenses and said indebtedness above specified and of said proceeds of said sale, this conveyance shall become void and of no further force and effect, but shall remain and be in full force and effect until such payment.

" Witness my hand, this 17th day of November, 1890.

"A. M. MEANS.

" Witness:

"A. B. McCANS,

" S. T. BLEDSOE."

On January 30, 1891, appellant Apollos filed his petition in this cause in the District Court of Cooke County against appellee Staniforth, who was alleged to be a resident of said county, alleging the execution of the instrument aforesaid; that the goods described therein were not of value more than sufficient to pay the debts secured thereby; that said appellant, on the day of the execution of the same, took actual possession of the

goods; that said instrument did not embrace all of the property of said Means, but that he had sufficient remaining to pay all his debts; that said instrument was executed by him in the utmost good faith and honesty, and was only meant and intended as a mortgage to secure the debts described therein; and it was understood and agreed at the time that upon payment of said debts said instrument should be cancelled and said property released to said Means, and that said Means had the ability to discharge said mortgage and fully intended so to do, and would have discharged it, but for the torts of the defendant complained of; that on November 18, 1890, while said Apollos was in actual and lawful possession of said goods, the appellee, Staniforth, and his agents and attorneys, caused a writ of attachment to be issued against said Means in a case brought by said Staniforth against him in the United States Court in the Indian Territory, in the third division thereof, at Ardmore, and directed and caused said writ to be by the deputy marshal of said district executed, by taking from the possession of said Apollos all of the goods so conveyed to him by said Means, whereby he claims that he has been damaged the full value thereof, for which he sues herein. The other appellants are the creditors attempted to be secured by said instrument, and on May 5, 1891, they filed their plea of intervention, adopting the allegations and joining in the prayer of the petition of their coappellant Apollos.

To appellants' pleading, appellee, on May 1, 1891, answered by general and special exceptions, the special exceptions being as follows:

"Specially excepting to said petition of plaintiff and to intervenors' plea, defendant says, that both such petition and plea are insufficient in law, in this: 1. Because it appears from the face of the instrument under which plaintiff and intervenors claim, and which is attached to plaintiff's petition, that such instrument is an assignment for the benefit of creditors, and void because not in compliance with the laws in force in the Chickasaw Nation, Indian Territory, the place of its execution. 2. Because such instrument is, apparent upon its face, a conveyance by the grantor therein, made with intent to hinder, delay, and defraud the creditors of said grantor, and is per se fraudulent and void. 3. Because such instrument being per se fraudulent, the said petition seeks to vary a contract and change the legal import, effect, and construction of the same by an alleged parol agreement and understanding made at the time of its execution."

The court below sustained the general and third special demurrers above set forth; and appellants declining to amend, it was adjudged that they take nothing by their suit; and from this judgment this appeal is prosecuted.

*Opinion.*—Appellants contend, that the court below could not take judicial notice of the laws of Arkansas in force in the Indian Territory,

they not having been pleaded by appellee, but we are of opinion that this contention can not be sustained.   On May 2, 1890, Congress passed an act adopting certain chapters of Mansfield's Digest of the Statutes of Arkansas as the law in force in the Indian Territory, among which was chapter 8, relating to assignments for the benefit of creditors, and chapter 110, relating to mortgages.   Mr. Greenleaf, in the first volume of his work on Evidence, section 490, says: "Reciprocal relations between the National Government and the several States comprising the United States are not foreign, but domestic.   Hence the courts of the United States take judicial notice of all the public laws of the respective States whenever they are called upon to consider and apply them.   And, in like manner, the courts of the several States take judicial notice of all public acts of Congress, including those which relate exclusively to the District of Columbia, without any formal proof.   But private statutes must be proved in the ordinary mode."   Also, see 1 Whart. on Ev., 287; 1 Rice on Ev., 32.

. By an act of Congress, passed February 27, 1801, it was declared, that "the laws of the State of Virginia as they now exist shall be and continue in force in that part of the District of Columbia which was ceded by the said State to the United States, and by them accepted for the permanent seat of government; and that the laws of the State of Maryland as they now exist shall be and continue in force in that part of said District which was ceded by that State to the United States, and by them accepted as aforesaid."   Bright. Dig., 251.

In the case of Bailey's Administrator v. Chubb, 16 Grattan, 284, the Supreme Court of Virginia held, after quoting the above section from Mr. Greenleaf, that the courts of Virginia would be required to take judicial notice not only of the act of Congress above referred to, but also of the laws of Virginia adopted thereby; and in Bird v. Commonwealth, 21 Grattan, 800, the same learned court made a similar ruling in reference to the laws of Maryland so adopted.

In 1 Rice on Evidence, section 32, cited above, we have reference to the case of Flanagan v. The Washington Insurance Company, 7 Pennsylvania, 306, as sustaining the same view, but we have not access to this volume.   The Virginia cases, however, meet with our approval, and we are therefore of opinion that the court below correctly took judicial notice of the laws of Arkansas as adopted by and made a part of the act of Congress.

It is conceded, that if the instrument referred to is to be governed by the laws of Arkansas, and is construed to be an assignment and not a mortgage, it is void by reason of not complying with such laws, and the action of the court below was correct.   That this instrument, as to its nature, validity, construction, and effect, is to be governed by the laws of the Indian Territory, where it was executed, and where the property

conveyed thereby was situated, is not seriously questioned. Jones on Chat. Mort., 299. The test in Arkansas as to whether an instument is an assignment or a mortgage seems to be, was it the intention of the grantor to set aside the property absolutely as a fund to be used in paying the debt; or was it only his intention to secure the debt by a lien thereon, reserving the right to discharge the debt out of other funds and release the lien? In the first case, it would be an assignment; in the second, a mortgage. Richmond v. Miss. Mills, 11 S. W. Rep., 960; The State v. Dupuy, Id., 964; Box v. Goodbar, 14 S. W. Rep., 925; Apollos v. Brady, 49 Fed. Rep., 401.

Applying this test, and looking to the face of the instrument alone, we think it should be held to be an assignment and not a mortgage. It seems to contemplate that the debts named therein shall be paid out of the proceeds of the property conveyed, and the defeasance clause only relates to the remainder after such payment. Apollos v. Brady, supra. But in Arkansas it is also held, that in deciding this question we are not confined to the face of the instrument in ascertaing the intention of the maker, but parol evidence can also be resorted to. In that State, as in this, even a conveyance absolute upon its face can be shown by parol evidence to have been intended to have only the effect of a mortgage. Richmond v. Miss. Mills, and Apollos v. Brady, supra.

As set forth in the conclusions of fact, it will be seen that in this case appellants very clearly alleged in their petition that Means only intended this instrument to have the effect of a mortgage, and that he had ample property to pay his debts and ability to discharge the lien, and fully intended so to do; from which we infer that it was the intention of the maker of the instrument only to give a lien upon the property to secure the debts named therein, reserving the right to discharge the lien with other funds and thereby redeem the property; and if appellants are able to show this by competent evidence, we think they should be given an opportunity to do so. That the instrument in question would only be a mortgage upon its face, if construed according to the laws of this State, we think clear. Watterman, Star & Co. v. Silberberg, 67 Texas, 100; Hudson v. Milling Co., 79 Texas, 401.

Because we are of opinion that the petition of appellants was sufficient to admit evidence outside the instrument to aid in construing the same, we think the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 7, 1893.